**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| In re Tajudeen O. Oladiran. | No. MC-10-0025-PHX-DGC |
| | **ORDER** |

Judge Snow issued an order requiring attorney Tajudeen Oladiran to show cause why he should not be disbarred from the practice of law in this Court or otherwise disciplined pursuant to Rule 83.2 of the Rules of Practice of the United States District Court for the District of Arizona ("Local Rules"). Doc. 78, *Oladiran v. Suntrust Mortgage, Inc.*, No. CV-09-01471-PHX-GMS (D. Ariz. Feb. 26, 2010) (the "*Suntrust* case"). The Clerk set up a separate case file and it was assigned to the undersigned judge for resolution of the order to show cause (the "OSC"). Doc. 1, *In re Oladiran*, No. MC-10-00025-PHX-DGC (D. Ariz. Feb. 26, 2010). This Court appointed Assistant United States Attorney Peter Lantka to prosecute the charges brought in the OSC. Docs. 4, 5. Mr. Oladiran has filed a response to the OSC (Doc. 17), and the special prosecutor has filed a reply (Doc. 24). Oral argument was held on August 12, 2010. Docs. 28, 29. For reasons set forth below, the Court finds by clear and convincing evidence that Mr. Oladiran engaged in professional misconduct and should be suspended from practicing before this Court for six months. The Court addresses Mr. Oladiran's medical evidence in a separate sealed order.

"'In the federal system there is no uniform procedure for disciplinary proceedings. The individual judicial districts are free to define the rules to be followed and the grounds for punishment.'" *In re Lehtinen*, 564 F.3d 1052, 1062 (9th Cir. 2008) (citation omitted).

Local Rule of Civil Procedure 83.2 governs attorney discipline in this Court, and provides that the Arizona Rules of Professional Conduct, Ariz. R. Sup. Ct. 42 ("Ethical Rules" or "ER"), shall apply to attorneys authorized to practice before the Court. LRCiv 83.2(e). Under Ethical Rule 8.4, it is professional misconduct for a lawyer to "violate or attempt to violate the Rules of Professional Conduct" or to "engage in conduct that is prejudicial to the administration of justice[.]" ER 8.4(a), (d).

The OSC sets forth four charges of professional misconduct against Mr. Oladiran. Doc. 1. Charge I is based on a motion filed in the *Suntrust* case in which Mr. Oladiran made disparaging statements about Judge Bolton. *Id.* at 2-3. Charge II concerns a related lawsuit brought by Mr. Oladiran against Judges Bolton and Snow. *Id.* at 3-4; *see Oladiran v. Bolton*, No. CV-09-02633-PHX-JWS (D. Ariz. Dec. 18, 2009). Charge III involves Mr. Oladiran's conduct as counsel in a civil rights action, *Okonkwo v. Glendale Union High School Dist.*, No. CV-08-00633-PHX-MHM (D. Ariz. Apr. 2, 2008) (the "*Glendale* case"), and a separate suit he brought on behalf of the civil rights plaintiff against Judges Murguia and Anderson, *Okonkwo v. Murguia*, No. CV-09-02604-PHX-JWS (D. Ariz. Dec. 15, 2009). *Id.* at 4-6. Charge IV alleges that Mr. Oladiran made threatening statements to private attorneys in the *Suntrust* case. *Id.* at 6-8.

Mr. Oladiran responds to the charges by asserting that any unethical behavior on his part was caused by a medical illness. Doc. 17 at 1-2. He has submitted sealed copies of his medical records in support of that defense. Docs. 25, 26. The special prosecutor argues that Mr. Oladiran's actions constitute textbook examples of professional misconduct, that there is no evidence of a causal connection between his medical illness and the misconduct, and that Mr. Oladiran has not otherwise shown cause why he should not be disbarred from the practice of law in this Court. Doc. 24.

**I.     Charge I: Motion for an "Honest and Honorable Court System."**

In the *Suntrust* case, Mr. Oladiran, as plaintiff, sued his mortgage lender and others for fraud and racketeering. Doc. 1, *Oladiran v. Suntrust Mortgage, Inc.*, No. CV-09-01471-PHX-SRB (D. Ariz. July 16, 2009). Mr. Oladiran sought a preliminary injunction to prevent

- 2 -

1  the trustee's sale of one of his houses. Doc. 17. During a scheduling conference on that
2  motion (Doc. 32), Judge Bolton authorized each side to take two depositions (Doc. 44 at 16).
3  Mr. Oladiran noticed the depositions of two bank executives for September 29 and 30, 2009
4  (Docs. 35, 36) and traveled to Atlanta for the depositions, but the deponents did not appear.
5  In an order dated October 1, 2009, Judge Bolton vacated the preliminary injunction hearing
6  on the ground that the trustee's sale had been cancelled, and denied as moot a pending
7  motion for protective order that sought to cancel the depositions noticed by Mr. Oladiran.
8  Doc. 46.

9  The same day, Mr. Oladiran filed a document titled "Motion for a[n] Honest and
10 Honorable Court System." Doc. 48. The caption referred to the "Dishonorable" Susan R.
11 Bolton and described Judge Bolton as a "brainless coward." The motion closed with this
12 apparent threat:

> This motion is filed by [Oladiran], pursuant to the law of, what goes around comes around. Judge Bolton, I just read your Order and am very disappointed in the fact that a brainless coward like you is a federal judge.
>
> I accused Suntrust Bank of racketeering etc., and many good lawyers in town told me the bank's executives would never be deposed, and that the case would go nowhere. I stupidly stuck to the notion that everyone is equal under the law etc. Boy was I wrong. The bank cancelled depositions set by the court, cancelled a hearing set by the court, and walked away without as much as a scratch.
>
> My thanks go out to [opposing counsel] who both warned me that I would lose (I should have listened to them).
>
> I apologize to all my clients. I know, I'm sorry does not repair the mess I made but, that's all I've got.
>
> To my family, words can't express my apologies; please remember me kindly.
>
> Finally, to Susan Bolton, we shall meet again you know where. ☺

24 *Id.* at 1-2; *see* Doc. 1 at 11-13, *In re Oladiran*, No. MC-10-00075-PHX-DGC.
25 On the basis of this filing, the OSC charges Mr. Oladiran with violation of Ethical
26 Rules 3.1, 3.5(d), 4.4(a), 8.2(a), and 8.4(d). Doc. 1 at 2-3. The special prosecutor argues that
27 each rule has been violated. Doc. 24 at 3-6. The Court finds violations of Rules 3.1, 3.5(d),
28 and 8.4(d).

### A. Ethical Rule 3.1 – Meritorious Claims and Contentions.

Ethical Rule 3.1 provides that a lawyer may not file a motion "unless there is a good faith basis in law and fact for doing so that is not frivolous[.]" ER 3.1. Mr. Oladiran's "motion for an honest and honorable court system" is frivolous and was not filed in good faith. The motion concerns Judge Bolton's cancellation of a preliminary injunction hearing that was rendered moot by postponement of a trustee's sale, and her denial as moot of a motion for protective order concerning the depositions Mr. Oladiran had noticed for Atlanta. Mr. Oladiran was upset that the deponents failed to appear in Atlanta, but his frustration provided no justification for suggesting that Judge Bolton treated him unequally, favored the powerful, was a brainless coward, or was dishonorable. The motion, which sought no tangible relief, was nothing more than an intemperate assault on the integrity of the Court and a judicial officer. The motion violated Ethical Rule 3.1.

### B. Ethical Rule 4.4(a) – Respect for Rights of Others.

Rule 4.4(a) provides that "[i]n representing a client, a lawyer shall not use means that have no substantial purpose other than to embarrass, delay, or burden any other person[.]" ER 4.4(a). The Court concludes, however, that this rule is not directed at the protection of judges. Ethical rules generally "are not designed to shield judges from unpleasant or offensive criticism[.]" *Standing Comm. on Discipline v. Yagman*, 55 F.3d 1430, 1437 (9th Cir. 1995). "Public criticism of judges and the decisions they make is not unusual[.]" *Id.* at 1444. While ethical rules often prohibit false statements of fact impugning the integrity of judges, those rules are meant "to preserve public confidence in the fairness and impartiality of our system of justice," rather than to protect judges from embarrassment. *Id.* at 1437.

The comment to Rule 4.4(a) explains that the rule seeks to protect litigants and third-parties from unnecessary embarrassment and undue delays and burdens. ER 4.4(a), cmt. 1 (2003 amend.) (protections "include legal restrictions on methods of obtaining evidence from others and unwarranted intrusions into privileged relationships, such as the client-lawyer relationship"). Given this focus on the rights of litigants and third parties, the Court finds

1    that Rule 4.4(a) does not apply to Mr. Oladiran's motion.

2            **C.**     **Ethical Rule 8.2(a) – Judicial and Legal Officials.**

3         Ethical Rule 8.2(a) applies to statements about judges: "A lawyer shall not make a
4    statement that the lawyer knows to be false or with reckless disregard as to its truth or falsity
5    concerning the qualifications or integrity of a judge[.]" ER 8.2(a). This Circuit has made
6    clear that "attorneys may be sanctioned for impugning the integrity of a judge or the court
7    only if their statements are false[.]" *Yagman*, 55 F.3d at 1438. It follows that the statements
8    must be "capable of being proved true or false; statements of opinion are protected by the
9    First Amendment[.]" *Id.*

10         Mr. Oladiran's motion refers to Judge Bolton as "dishonorable" and a "brainless
11    coward." These statements do not have "specific, well-defined meanings [that] describe
12    objectively verifiable matters," but instead appear to be meant in a "'loose, figurative
13    sense.'" *Id.* The statements constitute "'rhetorical hyperbole, incapable of being proved true
14    or false," and "convey nothing more substantive than [Oladiran's] contempt for Judge
15    [Bolton]." *Id.* at 1440. As a result, they are protected by the First Amendment and cannot
16    be found to violate Ethical Rule 8.2(a). *See id.* at 1440-42 (statements that a judge was
17    "dishonest," "ignorant," "ill-tempered," a "buffoon," and a "bully" were constitutionally
18    immune from sanctions).

19         Mr. Oladiran's motion could be viewed as making a factual assertion that Judge
20    Bolton conspired with Suntrust to vacate the preliminary injunction hearing and cancel the
21    depositions. Before sanctions could be based on the falsity of such an assertion, however,
22    the special prosecutor would have to prove its falsity. *See id.* at 1438, 1441. While the Court
23    does not believe for a minute that Judge Bolton conspired with Suntrust, the special
24    prosecutor did not attempt to present evidence on this issue (*see* Doc. 24 at 3-6) and the
25    Court may not relieve the special prosecutor of his burden of proof. *See Yagman*, 555 F.3d
26    at 1441-42. Without proof of falsity, Mr. Oladiran's motion is not sanctionable for

27

28

- 5 -

1    impugning the integrity of Judge Bolton. *See id.*[1]

2    **D.     Ethical Rule 8.4(d) – Misconduct.**

Ethical Rule 8.4(d) prohibits "conduct that is prejudicial to the administration of justice." ER 8.4(d). "The Supreme Court has held that speech otherwise entitled to full constitutional protection may nonetheless be sanctioned if it obstructs or prejudices the administration of justice." *Yagman*, 555 F.3d at 1442 (citing *Gentile v. State Bar of Nev.*, 501 U.S. 1030, 1074-75 (1991)). Given the significant burden this rule places on otherwise protected speech, the "prejudice to the administration of justice must be highly likely before speech may be punished." *Id.*

While an attorney's personal attack on a judge does not require recusal, "judges occasionally do remove themselves voluntarily from cases as a result of harsh criticism from attorneys." *Id.* at 1443-44. In the *Suntrust* case, Judge Bolton was not only the target of Mr. Oladiran's harsh criticism, but also of his threat. This resulted in an entirely foreseeable investigation by the United States Marshals Service (*see* Doc. 78 at 2) and ultimately in Judge Bolton's recusal. In an order dated October 15, 2009, Judge Bolton recused herself and vacated the scheduling conference set for November 30, 2009. Doc. 50. The case was reassigned to Judge Snow (*id.*), and he reset the scheduling conference for February 26, 2010 (Doc. 59). Mr. Oladiran's filing of the motion prejudiced the administration of justice by interfering with the random assignment of judges, *see Yagman*, 55 F.3d at 1444, and hindering the timely and efficient resolution of the litigation. The motion violated Ethical Rule 8.4(d).

---

[1] The special prosecutor notes that Mr. Oladiran's motion was published on the Internet legal blog Above The Law.com. Doc. 24 at 5 & n.3. That publication, however, did not impugn the integrity of Judge Bolton, but of Mr. Oladiran. The motion was described as "one of the craziest motions" ever published and on Above The Law's "motion of the day" feature. The motion was described as a "lesson on how not to address the court," and Mr. Oladiran was mocked for his "frustration" with Judge Bolton and his use of the "most menacing smiley emoticon ever." *See* http://abovethelaw.com/2009/10/motion-of-the-day-we-shall-meet-again-you- know-where/ (Oct. 23, 2009, 2:40 PM) (last visited Aug. 30, 2010).

1     **E.    Ethical Rule 3.5(d) – Impartiality and Decorum of the Tribunal.**

2     Ethical Rule 3.5(d) provides that a lawyer shall not "engage in conduct likely to 3 disrupt a tribunal." ER 3.5(d). A lawyer's "function is to present evidence and argument so 4 that the cause may be decided according to law[,]" while "[r]efraining from abusive and 5 obstreperous conduct[.]" ER 3.5(d), cmt. 4 (2003 amend.). Mr. Oladiran's motion plainly 6 violated this rule. It was abusive, obstreperous, and disrupted the proceedings before Judge 7 Bolton.

8     **F.    Mr. Oladiran's Response to Charge I.**

9     Disturbingly, Mr. Oladiran's response to the OSC seeks to justify his motion. Mr. 10 Oladiran refers to the motion as a "Whistleblower Pleading," implying that he was somehow 11 publicizing wrongdoing. He also asserts that the motion was "precipitated [in part] by the 12 conduct of Judge Bolton[.]" Doc. 17 at 12.

13     Mr. Oladiran also misstates facts, asserting repeatedly that Judge Bolton "ordered" 14 him to take the depositions in Atlanta when Judge Bolton clearly did not order them. She 15 allowed each side to take two depositions of their own choosing before the preliminary 16 injunction hearing. *See* Doc. 44 at 16, *Oladiran v. Suntrust Mortgage, Inc.*, No. CV-09- 17 01471-PHX-SRB.

18     Mr. Oladiran's efforts to justify his motion and his mischaracterization of the record 19 suggest a continuing disregard of his ethical duties. They also undercut his claim that past 20 ethical breaches were caused by his former medical condition.

21 **II.    Charge II: Mr. Oladiran's Lawsuit Against Judges Bolton and Snow.**

22     Shortly after the *Suntrust* case was reassigned, Mr. Oladiran filed a lawsuit against 23 Judges Bolton and Snow alleging that they conspired to violate his civil rights – Judge 24 Bolton by permitting the Atlanta deposition to be cancelled and Judge Snow by failing to 25 rectify her wrongdoing. Doc. 1, *Oladiran v. Bolton*, No. CV-09-02633-PHX-JWS (D. Ariz. 26 Dec. 18, 2009). That case was assigned to Judge Sedwick, a visiting judge from Alaska, who 27 promptly found it to be frivolous and dismissed it on the ground of judicial immunity. 28 Doc. 11. Judge Sedwick commented: "In eighteen years on the bench, this judge has seen

1 a number of lawsuits like this one which were foreclosed by the doctrine of judicial
2 immunity. However, every one of them was filed by a party proceeding *pro se*. Mr.
3 Oladiran is the first lawyer who has ever filed such a lawsuit[.]" *Id*. at 6. Judge Sedwick
4 imposed a $500 sanction on Mr. Oladiran for violation of Rule 11. Docs. 13, 20. Mr.
5 Oladiran appealed Judge Sedwick's dismissal, but the Ninth Circuit summarily affirmed and
6 found the issues raised on appeal "so insubstantial as not to require further argument."
7 Doc. 19-1 at 1.

8 The special prosecutor argues that Mr. Oladiran's suit against Judges Bolton and
9 Snow violates Ethical Rules 3.1 and 4.4(a). The Court agrees.

10 Mr. Oladiran's suit plainly was barred by the doctrine of judicial immunity. This
11 doctrine, fundamental to an independent judiciary, is well known to members of the bar. Mr.
12 Oladiran's lawsuit clearly violated Rule 3.1's prohibition against filing suit "unless there is
13 a good faith basis in law and fact for doing so that is not frivolous[.]" ER 3.1. Mr. Oladiran
14 also violated Rule 4.4(a) because the retaliatory suit had "no substantial purpose" other than
15 to embarrass and burden Judges Bolton and Snow. ER 4.4(a); *see Standing Comm. on*
16 *Discipline v. Ross*, 735 F.2d 1168, 1171 (9th Cir. 1984) ("The canon of professional ethics
17 impose on every lawyer the obligation 'not to clog the courts with frivolous motions or
18 appeals.'").

19 **III.    Charge III: The *Glendale* Case and Suit Against Judges Murguia and Anderson.**

20 Mr. Oladiran filed an employment discrimination and civil rights complaint on behalf
21 of Charles Okonkwo, a former employee of the Glendale Union High School District.
22 Doc. 1-3, *Okonkwo v. Glendale Union High School Dist.*, No. CV-08-00633-PHX-MHM (D.
23 Ariz. Apr. 2, 2008). During the course of the lawsuit, Mr. Oladiran filed multiple motions
24 to extend discovery deadlines (Docs. 24, 48, 63) without ever engaging in meaningful
25 discovery (*see* Doc. 91 at 2), failed to file a required settlement conference memorandum (*see*
26 Docs. 21, 36), and openly refused to comply with Judge Murguia's orders (*see* Docs. 73, 82,
27 85, 86). The latter conduct was particularly brazen. When Judge Murguia ordered Mr.
28 Oladiran to file a response to the defendants' motion for summary judgment, he responded:

- 8 -

"Counsel for Plaintiff WILL NOT comply with the Murguia 2/4/10 Order, and WILL NOT file any response on behalf of Plaintiff to Defendants' Motion for Summary Judgment." Doc. 86 (emphasis in original). Mr. Oladiran's conduct ultimately resulted in dismissal of Mr. Okonkwo's complaint. Doc. 91.

The special prosecutor argues correctly that Mr. Oladiran's conduct violated Ethical Rules 1.1 and 1.3. Rule 1.1 provides that "[a] lawyer shall provide competent representation to a client," which requires "the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation." Rule 1.3 requires that a lawyer "act with reasonable diligence and promptness in representing a client." Mr. Oladiran violated both rules by failing to provide competent and diligent representation to his client.

While the *Glendale* case was still pending, Mr. Oladiran filed a civil rights suit on behalf of Mr. Okonkwo against Judges Murguia and Anderson. Doc. 1, *Okonkwo v. Murguia*, No. CV-09-02604-PHX-JWS (D. Ariz. Dec. 15, 2009). The complaint alleged that Judge Murguia conspired with Judge Anderson and the defendants in the *Glendale* case to prejudice Mr. Okonkwo's rights by, among other things, mandating a settlement conference before Judge Anderson and allowing him to impose sanctions against Mr. Okonkwo. *Id.* The suit was dismissed by Judge Sedwick as "patently frivolous" (Doc. 13), and monetary sanctions were imposed (Docs. 13, 25, 31).

Judge Murguia clearly had authority to require Mr. Oladiran's client to appear at the settlement conference, and Judge Anderson acted reasonably in imposing sanctions. More importantly, the actions of these judges were judicial acts protected by the doctrine of judicial immunity. Mr. Oladiran's lawsuit against the judges violated Rule 3.1's prohibition against bringing a proceeding "unless there is a good faith basis in law and fact for doing so that is not frivolous," and Rule 4.4(a)'s prohibition against representing a client through means which have "no substantial purpose" other than to embarrass and burden the adverse parties.

**IV.  Charge IV: Mr. Oladiran's Comments to Private Attorneys.**

In February 2010, Mr. Oladiran sought information about attorney John Clemency, who previously had served as a mediator in the *Suntrust* case. Mr. Oladiran believed that

- 9 -

1 Mr. Clemency had improperly advised Suntrust not to settle. Doc. 17 at 27. Not satisfied
2 with answers provided by Mr. Clemency, Mr. Oladiran responded with the following email:

> You and Mr. Folks (Suntrust) conspire to destroy me, at the same time <u>you</u> pretend to be my friend. **May Allah judge you and punish you with extreme prejudice.** I tried to end this case even though I know of the corruption surrounding me; however, you and your co-conspirators will not leave me alone or let me leave or live. I repeat again: **<u>I do not fear any of you and your purchased help</u>**; I will fight until Allah gives me victory, even if it takes the rest of my life.

Doc. 1 at 52-54 (emphases in original), *In re Oladiran*, No. CV-10-00025-PHX-DGC. When opposing counsel, Kathleen Weber, denied having the information sought, Mr. Oladiran sent her the following email:

> Ms. Weber: Thanks for your responses. I do not believe you but, since you are all willing to join in the lie, we move on. However, in the name of Allah, I assure that if you continue to play Russian roulette with me, sooner or later, you will all lose, InsaAllah.

*Id.* at 43-45.

Mr. Oladiran does not dispute making these statements. He claims the "Russian roulette" statement "was meant to convey his prediction that, eventually, a judge would rule against Suntrust in a critical motion and Suntrust would regret not agreeing to a settlement when it had a chance." Doc. 17 at 28. Mr. Oladiran denies threatening Ms. Weber with any physical harm. *Id.*

The OSC states that to the extent Mr. Oladiran's comments may be construed as threatening, Mr. Oladiran may have committed an "act that reflects adversely on" his "fitness as a lawyer" in violation of Ethical Rule 8.4(b). *Id.* at 8. The special prosecutor makes no argument that Mr. Oladiran has violated Rule 8.4(b). *See* Doc. 24 at 17-20. Moreover, that rule applies only where a lawyer has committed a criminal act, *see* ER 8.4(b), and the special prosecutor has not shown that Mr. Oladiran's statements rose to the level of criminal acts.

The OSC further states that Mr. Oladiran's comments suggest an intent to delay the *Suntrust* case in violation of Ethical Rule 4.4(a). Doc. 1 at 8. Although the effect of Mr. Oladiran's statements may have been to delay the case, ethical violations must be established by clear and convincing evidence. *See* Ariz. R. Sup. Ct. 48(d); *Rosenthal v. Justices of the*

- 10 -

*Sup. Ct. of Cal.*, 910 F.2d 561, 564 (9th Cir. 1990). The Court cannot conclude by clear and convincing evidence that Mr. Oladiran's statements were intended to delay the proceedings. *See* Doc. 1 at 8.[2]

The OSC cites Ethical Rules 3.4 and 3.5 (Doc. 1 at 8), but the special prosecutor does not argue that those rules have been violated. No violation of Rules 3.4 or 3.5 has been established in connection with Mr. Oladiran's comments to counsel.

In a document filed in the *Suntrust* case, Mr. Oladiran accused Judge Snow of presenting a "biased rendition of the 'facts'" and stated that "whatever Suntrust wants in this action, Suntrust gets." Doc. 1 at 50-51. The OSC asserts, correctly, that those statements implicate Ethical Rule 8.2(a)'s prohibition against false statements of fact concerning the qualifications or integrity of a judge. *Id.* at 1. The special prosecutor asserts that Mr. Oladiran's assertion of bias on the part of Judge Snow violates Rule 8.2(a). Doc. 24 at 19-20. As explained above, however, the special prosecutor has the burden of proving the falsity of Mr. Oladiran's statements. *See Yagman*, 555 F.3d at 1438, 1441. Evidence of false statements sufficient to establish a violation of Rule 8.2(a) has not been presented by the special prosecutor.

In summary, the Court concludes that the ethical violations alleged in Charge IV of the OSC have not been established. The Court accordingly need not address Mr. Oladiran's argument that Charge IV should be dismissed because Ms. Weber did not testify at the OSC hearing. *See* Doc. 17 at 34-35.

**V.    Mr. Oladiran's Mental State.**

Mr. Oladiran argues that a lawyer's actions may not be regarded as ethical misconduct absent a showing of subjective intent. Doc. 17 at 31. He claims that he had no intent to

---

[2] The special prosecutor asserts that Mr. Oladiran's comments were meant to "embarrass" and "burden" opposing counsel in violation of Rule 4.4(a) (Doc. 24 at 19), but the OSC contains no such charge (*see* Doc. 1 at 6-8). Because due process requires that Mr. Oladiran be provided notice of both "'the particular alleged misconduct and of the particular authority under which the court is planning to proceed,'" *In re Lehtinen*, 564 F.3d 1052, 1060 (9th Cir. 2009), the Court will not impose sanctions on the basis of this rule.

- 11 -

1  commit the misconduct alleged in the OSC, and that his actions "were unplanned, caused by
2  his medical illness, and/or precipitated by the actions of other actors and *force majure*[.]"
3  *Id.* at 1-2. The Court finds below and in a sealed order that Mr. Oladiran's misconduct was
4  knowing, and was not caused entirely by his medical illness.

**VI.    Due Process.**

Local Rule 83.2 provides that an attorney may be disciplined "after such hearing as the Court may in each particular instance direct." LRCiv 83.2(a). While the Court may have discretion on how to proceed under Local Rule 83.2, this Circuit has made clear that a "'lawyer subject to discipline is entitled to due process, including notice and an opportunity to be heard.'" *In re Lehtinen*, 564 F.3d 1052, 1060 (9th Cir. 2009) (citations omitted). The notice requirement is satisfied where the court "'notifies the person charged both of the particular alleged misconduct and of the particular authority under which the court is planning to proceed.'" *Id.* (citation omitted). An "opportunity to brief the issue fully satisfies" the requirement that the person be provided an opportunity to be heard. *Pac. Harbor Capital, Inc. v. Carnival Air Lines, Inc.*, 210 F.3d 1112, 1118 (9th Cir. 2000).

Mr. Oladiran has been provided all the process due under the Constitution. The OSC sets forth the factual basis for each charge of professional misconduct and the specific ethical rules that may have been violated. Doc. 1. Mr. Oladiran was given an opportunity to address the charges both in written briefing – he chose the order of briefing (Doc. 10 at 4) – and at the hearing held on August 12, 2010. Mr. Oladiran has received adequate notice of the charges against him and a fair opportunity "to argue that his actions were an acceptable means of representing his client, to present mitigating circumstances, or to apologize to the court for his conduct." *Lasar v. Ford Motor Co.*, 399 F.3d 1101, 1110 (9th Cir. 2005).

**VII.   Sanctions.**

The purpose of attorney discipline "is to protect the public, the profession and the system of justice." *In re Neville*, 708 P.2d 1297, 1307 (Ariz. 1985). "Sanctions are not imposed upon the offending lawyer to punish, but to deter." *Id.* In determining the appropriate sanction, a court should consider the duty violated, the lawyer's mental state, the

1 actual or potential injury caused by the lawyer's misconduct, and the existence of
2 aggravating and mitigating factors. *In re Fresquez*, 783 P.2d 774, 780 (Ariz. 1989). Forms
3 of attorney discipline generally include disbarment from the practice of law, suspension from
4 the practice of law, public censure, informal reprimand, and probation. *See*, *e.g.*, Ariz. R.
5 Sup. Ct. 60; ABA Standards for Imposing Lawyer Sanctions, http://www.abanet.org/cpr/
6 regulation/standards_sanctions.pdf §§ 2.2-2.7 (last visited Sep. 17, 2010) ("ABA
7 Standards").

8 Mr. Oladiran's ethical violations are serious. He filed a frivolous "motion for an
9 honest and honorable court system" that prejudiced the administration of justice and
10 disrupted proceedings before Judge Bolton. He filed frivolous lawsuits against four federal
11 judges, lawsuits that clearly were barred by the doctrine of judicial immunity and had no
12 substantial purpose other than to embarrass and burden the named judges. Mr. Oladiran
13 failed to provide competent and diligent representation to a client resulting in dismissal of
14 the client's case.

15 Although his medical conditions appear to have had a bearing on his mental state,
16 suggesting that his actions may not have been fully intentional, the Court concludes that his
17 violations were knowing. The Court bases this conclusion on the fact that Mr. Oladiran filed
18 the two frivolous lawsuits after he had shown "significant improvement" in his medical
19 condition, as described in the Court's sealed order, and on the fact that he continues to justify
20 his misconduct and place blame on others. He falsely states that Judge Bolton "ordered"
21 depositions and then "inexplicably" granted a motion for protective order to stop the
22 depositions. Doc. 17 at 9-12. He describes his "motion for an honest and honorable court
23 system" as a the "Whistleblower Pleading," and claims that its filing was "precipitated by
24 the conduct of Judge Bolton[.]" Doc. 17 at 6, 12. On an Internet posting he claimed that the
25 "Whistleblower Pleading" was caused in part by "the utter injustice of the Bolton ruling."
26 Doc. 17-2 at 5. At the OSC hearing, Mr. Oladiran said he refused to comply with Judge
27 Murguia's order requiring him to respond to a summary judgment motion because
28 responding would have violated the Constitution and he did not swear as an attorney "to

- 13 -

become a puppet to anyone." Doc. 29, 8/12/10 Hr'g Tr. at 25.[3]  Given Mr. Oladiran's continuing efforts to justify his misconduct and place blame on others – even after his medical conditions have been addressed and alleviated – the Court concludes that his ethical violations are knowing.

In addition to Mr. Oladiran's medical conditions, mitigating factors include that he has no prior incidents of discipline, he has been cooperative in this disciplinary proceeding, and he ultimately stated his remorse and promised not to engage in further professional misconduct. *See In re Girardi*, — F.3d —, 10 Cal. Daily Op. Serv. 8932, 2010 WL 2735731 (9th Cir. July 13, 2010). An aggravating factor is that Mr. Oladiran's actions were undertaken in a very public manner, with his attacks on judges being visible to many who know him to be a member of the bar. Such actions are detrimental to the rule of law and the administration of justice.

The ABA Standards for Imposing Lawyer Sanctions discuss the discipline appropriate for abuse of the legal process, which includes failure to bring a meritorious claim and to obey court orders and rules. *See* ABA Standards § 6.2. The standards suggest that disbarment is appropriate when a lawyer knowingly violates a court order or rule with the intent to benefit himself or another. *Id*. at § 6.21. Suspension is appropriate when a lawyer knows that he is violating a court order or rule and causes interference with a legal proceeding. *Id*. at § 6.22. Lesser sanctions are appropriate when the lawyer acts negligently. *Id*. at §§ 6.23, 6.24.

As noted above, the Court concludes that Mr. Oladiran knowingly violated the ethical rules of this Court. His violations caused interference with judicial proceedings and were detrimental to the administration of justice. Although the number of his violations could lead reasonable persons to conclude that disbarment is warranted, the mitigating factors mentioned above persuade the Court that suspension is appropriate. Because Mr. Oladiran's mental state was more culpable than mere negligence, the Court concludes that a lesser

---

[3]This citation is to the Court's rough copy of the transcript provided by the reporter. Pagination may change in the final version.

- 14 -

sanction is not warranted.

Suspension generally may extend for a period of years (*see* Ariz. R. Sup. Ct. 60(a)(2) (up to five years); ABA Standards § 2.3 (up to three years)), but should not be less than six months (ABA Standards § 2.3).  The Court concludes that a relatively brief suspension of six months will be sufficient, but not longer than necessary, to accomplish the deterrent purposes of attorney discipline.  Such a sanction will reflect the seriousness of Mr. Oladiran's conduct, but will also recognize the mitigating factors in his favor and afford him an opportunity to return to practice before this Court in relatively short order.  Further ethical violations, of course, will result in more severe sanctions.

**IT IS ORDERED:**

1. The Court finds by clear and convincing evidence that attorney Tajudeen Oladiran has violated Ethical Rules 1.1, 1.3, 3.1, 3.5(d), 4.4(a) and 8.4(d).
2. Mr. Oladiran is suspended from the practice of law before this Court for six months.  This suspension shall run from October 1, 2010, to April 1, 2011.
3. The Court anticipates that judges of this Court in any cases where Mr. Oladiran currently is appearing will afford him and his clients reasonable time to arrange substitute counsel.

DATED this 21st day of September, 2010.

David G. Campbell  
United States District Judge

- 15 -